IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 24-142 |
| ANTHONY LOMBARDO | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Justin Ashenfelter, Assistant United States Attorney for the District, hereby files this sentencing memorandum. The defendant, Anthony Lombardo, is scheduled to be sentenced on November 14, 2024.

**I.    BACKGROUND**

On April 9, 2024, the United States Attorney filed an information charging the defendant with assault on a federal officer, in violation of 18 U.S.C. § 111(a)(1), (b) (Count One). On May 6, 2024, the defendant waived prosecution by indictment and entered a plea of guilty to Count One. At the time the plea was entered the parties entered into a written plea agreement that provided for stipulated specific offense characteristics, an appellate waiver, and a forfeiture waiver. The agreement did not provide a recommended sentence to the Court.

The facts of this case are detailed in the Presentence Investigation Report ("PSR") and in the government's Change of Plea Memorandum [Doc. 25]. In summary, on Tuesday, January 17,

2023, at approximately 9:30 a.m., the defendant approached a Court Security Officer ("CSO") with a large kitchen knife on the sidewalk outside the James A. Byrne U.S. Courthouse in Philadelphia. The CSO ordered the defendant to drop the knife but the defendant refused. The CSO shot the defendant in his midsection. Upon falling to the ground, the defendant attempted to retrieve a second knife hidden in his shirt sleeve. In response, the CSO shot the defendant again, incapacitating him. First responders administered aid to the defendant, who was laying on the sidewalk, and they discovered make-shift body armor covering the defendant's chest and abdomen. The defendant stated, in substance: "Let me bleed out." The defendant was taken to Jefferson Hospital where he recuperated from his injuries and was eventually ordered detained by a U.S. Magistrate Judge. The defendant has been incarcerated at the FDC Philadelphia since February 2, 2023. A court-authorized search of the defendant's cellphone revealed that in the days leading up to January 17, 2023, the defendant had searched the internet with the following terms: "dea hq attack"; "how to attack 600 arch st phila"; and "600 arch st." 600 Arch Street is the street address for the Drug Enforcement Administration (DEA) in Philadelphia and is a building connected to the U.S. Courthouse where the defendant approached the CSO.

      The January 17, 2023 incident was the second time the defendant engaged law enforcement in a standoff with a weapon. He is currently on state probation following a 2006 aggravated assault conviction in Bucks County, where he barricaded himself in his basement after he pointed a rifle at a police officer and pulled the trigger. However, the rifle never fired. As detailed in the PSR and discussed below, the defendant has a documented history of mental

health diagnoses. He was not taking his prescribed medications in January 2023, and his failure in that regard undoubtedly influenced him to engage in the offense conduct.

Based upon the offense of conviction, which is incredibly serious and alarming, and considering the defendant's criminal history that includes a prior conviction for a similar crime, the government recommends the Court impose a sentence at the top of the parties' projected guideline range to protect the public by incapacitating the defendant while providing him with the therapy and treatment he requires.

## II.     MAXIMUM PENALTIES AND SENTENCING GUIDELINES CALCULATION

### A.     **Statutory Maximum Sentence**

For Count One (assault on a federal officer), the maximum term of imprisonment is 20 years, three years of supervised release, a $250,000 fine, and a $100 special assessment.

### B.     **Sentencing Guidelines Calculation**

Pursuant to USSG § 2A2.2(a), the base offense level for the offense is 14. PSR ¶ 23. Because the assault involved more than minimal planning, the offense level is increased by two levels. PSR ¶ 24. The PSR provides that the defendant "otherwise used" a dangerous weapon, so the offense level is increased by 4 levels.[1] PSR ¶ 25. The defendant was convicted of 18 U.S.C. §

---

[1] The defendant objects to the 4-level enhancement pursuant to USSG § 2A2.2(b)(2)(B), and instead contends that a 3-level enhancement pursuant to § 2A2.2(b)(2)(C) more accurately reflects the circumstances of the offense. The government agrees and has previously stipulated to the 3-level enhancement in Paragraph 10c of the guilty plea agreement. While the parties' stipulations are not binding upon the Court or U.S. Probation, the government submits that it has contemplated the appropriate enhancements and continues to find that they adequately address the offense conduct and the defendant's actions.

3

111(b), so his offense level is increased by two levels. PSR ¶ 26. The victim was a government officer and the defendant's crime was motivated by the victim's status as an officer, so his offense level is increased by six levels. PSR ¶ 27. The defendant accepted responsibility and timely notified the government of his intention to plead guilty, so he is entitled to a three-level reduction pursuant to USSG §§ 3E1.1(a), (b). PSR ¶ 32-33. The total offense level is 25.[2] PSR ¶ 34. The defendant has a criminal history score of three, resulting in a criminal history category of II. PSR ¶ 39. Therefore, the PSR provides that the guideline range is 63-78 months' imprisonment. PSR ¶ 97.

### III. CONSIDERATION OF THE 3553(a) FACTORS

The Supreme Court has declared, "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

The Court must consider all of the sentencing factors set forth in 18 U.S.C. § 3553(a), in determining the appropriate sentence in this case. The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for

---

[2] The government submits that the total offense level is 24, instead of 25 (*see* Footnote 1), and with the defendant in criminal history category II, the resulting guideline range of 57-71 months' imprisonment is applicable. However, even if the Court adopts the range set forth in the PSR, the government's recommendation of 71 months is within the range of 63-78 months.

4

the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).³ Restitution is not an issue in this case.

### A. The nature and circumstances of the offense and the history and characteristics of the defendant.

The defendant is a 46-year-old citizen of the United States. He has a long work history as a union carpenter and was capable of holding down steady employment for much of his life. The defendant maintains a close relationship with his siblings and, by all accounts, claims a loving and supportive family. He is a homeowner and a landlord. He is not married and does not have children. The defendant has been diagnosed with schizophrenia and various drug addiction

---

³ Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

disorders. He has a history of substance abuse and self-medicating through the use of illegal substances. When he was admitted to the hospital following his injuries from the offense conduct, a drug screen revealed the presence of fentanyl, amphetamines, marijuana, and opiates.

The defendant's sister became his de facto caretaker in 2012. She reportedly maintained control over his finances, scheduled his doctors' appointments, and oversaw that he took his medications.

As referenced above, in 2006, the defendant attempted what he referred to as "suicide by cop" when he pointed a firearm at a police officer who had responded to the defendant's home for a wellness check. The officer described that the defendant appeared to be pulling the trigger to discharge a rifle and repeated the words, "Kill me. Kill me." The defendant was arrested shortly after he barricaded himself in his basement. He was convicted by plea of guilty to the offenses of aggravated assault and criminal homicide. He remains under the supervision of state probation as of this writing.

The defendant's mental health has apparently improved since he has been incarcerated on this case. This change is attributable to imposed counseling and proper medication. However, the psychologist who conducted the defendant's recent psychological testing cautioned that careful assessment and monitoring are recommended, and that he must adhere to a medication regime, undergo weekly behavioral health treatment, and avoid self-medicating with illegal drugs. The defendant presents as a person who requires constant psychological care but can function adequately in society so long as he is properly medicated, avoids illegal drug use, maintains a

low stress level, and regularly attends therapy.

The offense conduct in this case is the result of what happens when the defendant does not adhere to a schedule of routine medication and therapy. Notwithstanding the well-intentioned family support system that aims to keep the defendant on track, there is an undeniable risk that in the future he can find himself as he was in January 2023. That episode did not just affect him. Without provocation, the defendant victimized a law enforcement officer on a busy city street during rush hour. The defendant's actions put the officer in grave danger and created a public safety risk to bystanders who were simply going about their morning commute.

Much of the focus of this case has, understandably to a degree, been on the defendant and his lifelong battle to conquer his mental health issues. However, the victim in this case – a law enforcement officer who works to keep safe the courthouse and its staff – suffered dearly. After the episode, the CSO underwent therapy and missed months of work while recovering from the trauma inflicted upon him by the defendant. In hindsight, it is easy to understand what factors brought the defendant to the U.S. Courthouse that day. But hindsight offers little solace to the CSO who was attacked, seemingly at random, and put in immediate fear of his life on an otherwise normal morning. But for the victim's quick reflex and judgment, the outcome of January 17, 2023 could have cost the victim his life. The public was put at great risk and the CSO bore the brunt of the defendant's actions. This cannot be overstated.

> **B.** **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

The defendant committed a serious offense that endangered law enforcement and

members of the public. Regardless of whatever ailments prompted the encounter, and despite the encouraging strides the defendant has made in improving his mental health over the last 21 months, the fact remains that the defendant created a truly frightening environment at a federal courthouse. Indeed, the only reason the defendant has been in a position to get a handle on his mental health is because he has been in jail and required to undergo treatment.

The Court's sole aim here should not be to punish the defendant. However, a sentence of imprisonment must reflect the serious nature of the offense and promote respect for the law. Someone who menaces a law enforcement officer with a knife outside of a federal courthouse must go to prison for a lengthy period of time.

### C. The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.

The sentence the Court imposes should provide both specific and general deterrence to criminal conduct and it must serve to protect the public. The defendant must be incapacitated and removed from the public to prevent him from committing future crimes. He created a public safety risk that requires his removal. During the period of confinement, the defendant should continue his therapy and routinely take his prescribed medications. General deterrence will be served when the sentence imposed on the conviction is made public.

### D. The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.

There is no known need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional

treatment in the most effective manner . . . ." § 3553(a)(2)(D). A guideline sentence will afford the defendant with the opportunity to pursue therapy, counseling, training, education, and access to mental health professionals within the Bureau of Prisons. The government supports his designation to a mental health prison facility for these purposes.

      **E.**      **The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

The government is not aware of any policy statements that are of particular concern in this case. Here, a within-guideline sentence is procedurally and substantively reasonable. *See United States v. Valentin*, 21-2639 (3d Cir. Oct. 7, 2024) (precedential) ("'As long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm.'") (citing *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008)). A top of the guideline sentence in this case is reasonable and not unwarranted in light of the defendant's criminal history and his conduct that placed the community and a federal law enforcement officer in imminent danger.

**IV.**      **RESTITUTION**

There is no claim for restitution in this case. The victim is not seeking compensation. PSR ¶ 109.

## V.   CONCLUSION

The government requests that the Court impose a sentence within the guideline range of imprisonment for the offense conduct, 71 months.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s/ Justin Ashenfelter*
JUSTIN ASHENFELTER
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Government's Sentencing Memorandum has been served by ECF and electronic mail upon:

Kathleen Gaughan
kathleen_gaughan@fd.org

Elizabeth Toplin
elizabeth_toplin@fd.org

*/s/ Justin Ashenfelter*
JUSTIN ASHENFELTER
Assistant United States Attorney

Date: November 7, 2024